Maurice *vs.* Worden.

</div>

(Decided 30th June, 1880.)

---

## BERNARD MAURICE *vs.* JOHN L. WORDEN.

*Order of introducing Evidence, as affecting Evidence offered to the Court upon a motion to exclude Evidence from the jury—Privileged Communications—Distinction between an Absolute and qualified Privileged communication—Admissions of Parties, how far admissible in Evidence—Inadmissibility of a Copy of a Copy as evidence—Evidence admissible to lay a Foundation for the admissibility of Secondary evidence—Admissibity in evidence of Certified copies of papers on File in the Navy Department.*

The rule of Court providing that " on trials of fact, the plaintiff shall have the opening and conclusion," does not apply to the case where

on a motion by the defendant for the exclusion of evidence, he offers to introduce evidence exclusively for the Court, for the purpose of enabling it to determine whether the evidence asked to be excluded is such a privileged paper as excluded it altogether from being properly in evidence before the jury.

Nor is such case affected by the rule that the plaintiff must put in the whole of his evidence upon every point or issue which he opens, before the defendant proceeds with the evidence on his part.

The Court has at any stage of the trial the right and power to exclude evidence improperly admitted, or admitted subject to exceptions. If its admissibilty depends upon outside or collateral facts, there can be no reason why the Court should not hear them without delay.

The admissibility of evidence must not be confounded with the rule directing the order in which the respective parties are required to offer their evidence in support of their case.

The Act of Congress, Rev. Stat. U., S., sec. 1547, by express terms provides, that the orders, regulations, and instructions issued by the Secretary of the Navy are to be recognized as the regulations of the Navy. Number 1448 of these regulations directs that "all officers through whom communications from inferiors are to be forwarded to the Department, one of the bureaus, or any authority higher than themselves, must forward the same, if couched in respectful language, as soon after being received as practicable, and they will invariably state their opinion in writing by indorsement or otherwise, in relation to every subject presented for decision." M. was a professor at the United States Naval Academy at Annapolis, and placed his resignation in the hands of W., then Superintendent of the Academy, to be forwarded to the Secretary of the Navy for his decision. The resignation was forwarded by W. with his indorsement thereon of reasons why it should be accepted. In an action for libel, based upon this indorsement, brought by M. against W., it was HELD:

1st. That the indorsement in question did not fall within the class of communications which are *absolutely* privileged.

2nd. That it was however privileged to the extent that the occasion of making it rebutted the presumption of malice, and threw upon the plaintiff the *onus* of proving that it was not made from duty, but from actual malice, and without reasonable and probable cause.

Maurice *vs.* Worden.

The admissions of a party freely and voluntarily made, are always evidence which may be introduced by the opposite party. The evidence however must be confined to the admissions of the party.

A witness stated that the defendant, in 1878, in reply to a question from her, admitted that he had indorsed upon the resignation of the plaintiff the words complained of as libellous. And the plaintiff offered in evidence a copy furnished from the files of the Naval Academy, of said resignation, and the indorsement thereon of the defendant. The said witness further proved that she told the defendant she had said copy in her possession, and it was to that she referred in her conversation with him, but did not state that it had been shown to him. HELD:

That as an admission of the defendant, said copy was not admissible, nor was it admissible upon its own merits, as it was a copy from a copy, and no sufficient ground had been stated in the proof to let it come in as secondary proof.

A letter written to the Secretary of the Navy, asking for the delivery of an original letter on the files of the Navy Department, and the reply of the Secretary giving his reasons for declining to deliver up said original, are after proof of their genuineness, admissible in evidence for the purpose of laying a foundation for the admissibility of secondary evidence.

A certified copy from the Navy Department, under the hand of the Secretary and the seal of the Department, is within sec. 30, of Art. 70, of the Revised Code of this State, and admissible in evidence.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*First and Second Exceptions.*—Sufficiently stated in the opinion of the Court.

*Third Exception.*—The plaintiff offered to prove by John Thomson Mason, Esquire, one of the plaintiff's counsel, that he saw, on May 10th, 1879, a paper in the Navy Department at Washington, in the hand-writing of the plaintiff, in the words of the resignation contained in "Plaintiff's Exhibit A," and that on the back of the

said paper were written the words, beginning "this resignation is tendered," and signed "John L. Worden," contained in the said "Plaintiff's Exhibit A;" that the said paper was shown him, on request, by one of the clerks of the department, and was at the time of so showing it inspected by several persons besides himself; and further, that he served upon Richard W. Thompson, Secretary of the Navy, the written communication signed by himself and Charles J. Bonaparte, and marked "Plaintiff's Exhibit B," which is as follows, to wit:

Hon. R. W. Thompson,
                    Secretary of the Navy,
                                        Washington, D. C.,
    Dear Sir:—We request the privilege of removing from the files of the Navy Department, the original resignation of Professor B. Maurice, as assistant professor of French at the United States Naval Academy in Annapolis, tendered October 4th, and accepted October 7th, 1872, together with the endorsement thereon of the then Superintendent of the Academy, Rear Admiral John L. Worden.
    This paper is needed in an action for libel in the Court of Common Pleas of Baltimore City, between Professor Maurice and Admiral Worden.
    Any reasonable security for the proper custody and return of the paper will be given, if required.
                    We are, sir, yours, very respectfully,
                                    CHARLES J. BONAPARTE,
                                    JOHN THOMSON MASON,
                        Attorneys for Professor B. Maurice.

    And received in due course of mail after the date thereof, the answer thereto, signed by the said Secretary (whose signature he could identify) marked "Plaintiff's Exhibit C," which is as follows, to wit:

Maurice *vs.* Worden.

NAVY DEPARTMENT,
*Washington*, May 12th, 1879.

Gentlemen:—Your letter of the ninth instant, requesting the privilege of removing from the files of this department, the original resignation of Professor B. Maurice, as asst. Professor of French at the U. S. Naval Academy, has been received.

In reply thereto, you are informed that the department finds itself unable to comply with the request to furnish the original paper, inasmuch as the law requires that the records shall be kept safely in the department. The Secretary of the Navy is made personally the custodian. The department will, however, do all in its power to comply with the wishes expressed, which is, as explained in a personal interview with Mr. Mason, to furnish a certified copy of the paper, which is herewith forwarded.

Very respectfully,

(Signed,) R. W. THOMPSON,
Secretary of the Navy.

Messrs. Chas. J. Bonaparte, John Thomson Mason, Attorneys at Law, 15 Lexington street, Baltimore, Md.

And at the same time, and also by mail, the paper marked "Plaintiff's Exhibit D," which is as follows, to wit:

U. S. NAVY DEPARTMENT,
*Washington*, D. C., May 12, 1879.

I hereby certify that the annexed is a true copy of the original resignation of B. Maurice, as assistant professor of French at the U. S. Naval Academy, now on file in this department.

JOHN W. HOGG,
Chief Clerk.

Be it known that John W. Hogg, whose name is signed to the above certificate, is now and was at the time of so signing, Chief Clerk in the Navy Department, and that full faith and credit are due to all his official attestations as such.

(Place of Seal of the Navy Department of the United States.)

In testimony whereof, I have hereunto subscribed my name and caused the seal of the Navy Department of the United States to be affixed at the City of Washington, this 12th day of May, in the year of our Lord, one thousand eight hundred and seventy-nine, and of the Independence of the United States, the one hundred and third.

R. W. Thompson,
Secretary of the Navy.

[The copy of the letter and endorsement thereon certified as above, are omitted as unnecessary to a proper understanding of the case.—Rep.]

To the admissibility of this evidence the defendant objected, and the Court, (Brown, J.,) sustained the objection, and refused to permit the same to be received in evidence. The plaintiff excepted.

*Fourth Exception.*—The plaintiff then offered in evidence, the paper marked "Plaintiff's Exhibit D," separately, but the defendant objected to the admissibility of the same in evidence, and the Court sustained the objection, and refused to permit the same to be received in evidence. The plaintiff excepted.

*Fifth Exception.*—The plaintiff then offered to prove by R. M. Chase, in the first bill of exceptions mentioned, that with the knowledge of the defendant, and as the Secretary of the Naval Academy, and for the purpose of copying them, he read the original resignation of the plaintiff, mentioned in the declaration, and also on the

back thereof the words of the endorsement, beginning "this resignation is tendered," and signed "John L. Worden," contained in Plaintiff's Exhibit A, the signature of which words on the original paper was in the defendant's hand-writing, and with the knowledge of the defendant made and retained copies of both of the said writings, and on October 4th, 1872, mailed the originals to the Navy Department at Washington, D. C., all in the discharge of his duty as such Secretary. That the copy thereof, marked "Plaintiff's Exhibit A," was furnished by Admiral Rogers, during the defendant's absence from Annapolis, to the plaintiff, at the latter's request, Admiral Rodgers being then Superintendent, and is a true copy, and that the original copies made by him from the originals have been inspected by Admiral Rodgers, when Superintendent, and the counsel for the plaintiff and defendant in this suit, who asked for them by reason of being such counsel, and are always accessible to the Superintendent of the Academy, the clerks in the witness' office, and, with the Superintendent's permission, to any other person connected with the Naval Academy, and that the defendant knew on October 4th, 1872, by reason of his official position, that they were so accessible to the Superintendent and the clerks of witness' office. To the admissibility of this evidence the defendant objected, and the Court sustained his objection. The plaintiff excepted.

*Sixth Exception.*—The plaintiff then offered to prove by the witness, R. M. Chase, that the original resignation of the plaintiff with the endorsement thereon, which is the ground of action, was immediately forwarded to the Navy Department, at Washington, D. C. And further offered to prove by himself, his wife, and W. W. Bowie, that enquiries had been made by all three, on numerous occasions between January 5th, 1876, and the time of the defendant's return to Washington, in February, 1878, at the Navy Department, for the said original

paper, and that careful search had been made in their presence, by the officials of the department, on all these occasions, for the said paper, and that the same could not be found anywhere among the papers of the said department; and further to prove that the letter marked "Plaintiff's Exhibit E," which is as follows, to wit:

NAVY DEPARTMENT,
*Washington,* Jany. 6, 1876.

Sir:—Your letter of the fifth instant requesting copies of your resignation as assistant professor at the Naval Academy, and of its acceptance, has been received.

In reply you are informed that there is no record of your resignation on file in the department, but there is a copy of a report from the Superintendent of the Naval Academy, but it is of such a character that the department refrains from sending it unless it is particularly desired.

Very respectfully,

(Signed,)     JOHN W. HOGG,
Chief Clerk.

Mr. B. Maurice, Relay House, B. & O. R. R.

—was written to him officially by John W. Hogg, the chief clerk of the said department, and that the signature thereto is in his, the said Hogg's hand-writing; and further, that no copy or other information of the endorsement, or of any report upon his conduct, while at the Naval Academy, was ever furnished him by the department, or any other person, previous to the communication from Admiral Rodgers, marked "Plaintiff's Exhibit A." To this evidence the defendant objected as inadmissible, and the Court sustained the objection and refused to permit the same to be received in evidence. The plaintiff excepted.

Maurice *vs.* Worden.

*Seventh Exception.*—The plaintiff then offered to prove by his own testimony, that he held, during six years, the position of assistant professor of French, at the United States Naval Academy, at Annapolis, but was never commissioned or sworn in as an officer or other member of the United States Navy; that about October 1st, 1872, a person, whom the plaintiff considered his personal enemy, was appointed professor of French at the said academy, and head of the department thereof, wherein the plaintiff was employed as a subordinate; that for this reason the plaintiff determined to resign his said position, and on October 4th, tendered to the defendant, then superintendent of the said academy, his resignation thereof in writing, of which resignation those contained in the papers marked "Plaintiff's Exhibits A and D," are true copies; that upon his so tendering his said resignation, the defendant professed great reluctance to receive the same, and much kindly solicitude, lest the plaintiff should injure his prospects in life by too hasty action, and upon the plaintiff's persisting in his intention to resign, the defendant said he would not recommend the acceptance of the said resignation, unless he were assured by some discreet and responsible friend of the plaintiff, that the latter had better reasons for offering it than those therein set forth; that the plaintiff thereupon suggested the late Honorable John Thomson Mason, of Annapolis, as a person suitable to so assure the defendant of the propriety of the plaintiff's so resigning, and the defendant said he would be fully satisfied with such an assurance from said Judge Mason. That on October 5th, the plaintiff called upon the defendant in company with Judge Mason, and the latter told the defendant, in the plaintiff's presence, that the plaintiff's reasons for resigning were, in his opinion, sufficient to render the step prudent and creditable on the part of the plaintiff; whereupon, the defendant professed himself as entirely satisfied, and promised to recommend the imme-

diate acceptance of the said resignation. That on October 7th, the plaintiff again called upon the defendant, and inquired if the acceptance of his said resignation had arrived; the defendant replied that it had not, and added that he had heard since their last interview, "ugly reports" of the plaintiff (specifying them); that the plaintiff indignantly denied the truth of such accusations, and demanded the name of the person who had made them, and the defendant, without giving him the name, said, "I have been shown a letter in which you confess your guilt." The plaintiff again denied that he had either been guilty of such action, or made any confession of it, and asked to see the letter spoken of by the defendant; the latter said he had not the letter then, but would show it to the plaintiff at an hour named, on the day following; that at the hour appointed the plaintiff came to the defendant's office, and was shown the letter marked "Plaintiff's Exhibit F," which is as follows, to wit:

Revd. Julius M. Dashiell,
         Saint John's College.

Sir:—Your note just received, fell on me like a thunderbolt. After a long state of stupor, abundant tears came. My resolution, a painful one, is taken now. I obey your dictates.

It was my intention to tender my resignation at the end of the vacation, as a petition I made last year for a change in my arrangements with Saint John's, was not answered, and as there is no, or little prospect for my petition being answered for this year; still I could have made a new attempt, but the reception of your note obliges me to return to my first intention without delay, and without trying again. Whatever inconvenience such haste may cause to me, by the end of the week I will have left Saint John's, and consequently will remit my resignation sooner than I proposed, into the hands of the Secretary of the Board.

Maurice *vs.* Worden.

Now that the bitter sacrifice is accomplished, permit me to tell you, sir, that for years past, I have been submitted by an always wise and just Providence, to uncommon trials and ordeals. My Creator—whose mercy is my only refuge, in my loneliness and abandonment—my Creator and I, alone know what misfortunes I had to bear by the fault of another. Understand me well; I do not mean by this to disculpate myself in everything, for if I have my full share of adversity, I have also my faults and sins, and I must bow, without murmur, to Providence, who chastises me.

My lot of misery has attained such a pitch, for one year or two the world has been occasionally so unjust to me. I am in a state of such profound discouragement and dispair, I am so convinced of the uselessness of any effort on my part to disculpate or justify me of any charge, that I yield to adverse fortune, resistless and defenceless. Still I owe to the sincere and merited respect I always professed and do profess for you, to tell you if I have offended you in any way, I have for it the deepest and most sincere regret and repentance, and in such case I earnestly beseech you, in the name of our merciful Lord, to forget and forgive any wrongs of mine.

With that fervent hope, allow me, sir, to subscribe myself your most obedient and respectful servant,

B. MAURICE.

That the plaintiff then explained to the defendant that this letter was written by him to the Reverend Julius M. Dashiell, in apology for an offence the plaintiff feared he had given the said Dashiell, in a matter in nowise connected with the charges against the plaintiff, mentioned by the defendant on the day previous, and he, the said plaintiff, supposed at the time he fully convinced the defendant by these explanations, that the letter had no relation to the above mentioned charges against the plaintiff;

that at the conclusion of their said interview, the plaintiff said to the defendant, "Commodore Worden, if there is any doubt of my innocence in your mind, I withdraw my resignation and ask you to order an official inquiry into my conduct;" to which the defendant replied, "No, sir, I am perfectly satisfied, and here is the acceptance of your resignation;" at the same time handing to the plaintiff the paper marked "Plaintiff's Exhibit G," which is as follows, to wit:

NAVY DEPARTMENT,
*Washington,* 7th October, 1872.

Sir:—Your resignation as an assistant professor of French at the Naval Academy, tendered in your letter of the 4th instant, is hereby accepted, to take effect from the first instant.          Respectfully,

(Signed,)                    A. LUDLOW CHASE,
Actg. Secretary of the Navy.

Mr. B. Maurice, late Asst. Professor, &c., Naval Academy, Annapolis, Md.

Received and forwarded.
(Signed,)                    JOHN L. WORDEN,
October 8th, 1872.          Commo. and Supt. N. A.

That the plaintiff was wholly ignorant of any endorsement having been made on his resignation by the defendant, and did not even suspect that any such endorsement or unfavorable written report of any kind had been made of him by the defendant, until he received the communication from Admiral Rodgers, marked "Plaintiff's Exhibit A," in the month of January, 1876. To the admissibility of this evidence the defendant objected, and the Court sustained the objection. The plaintiff excepted.

*Eighth Exception.*—The plaintiff further offered to prove by his own testimony, that while both he and the defend-

ant were attached to the United States Naval Academy, the defendant, in the autumn of 1870, requested him to give private lessons in French to two of defendant's minor daughters; that he gave such lessons during the greater part of two years, and at the time of leaving the academy had given a hundred and thirty-four lessons, of one hour each, for the two young ladies; that nothing was ever said between the defendant and himself as to the compensation he was to receive for these services, but that he can, as a professional teacher, testify that $1.50 per hour, would have been a reasonable compensation; that no pay therefor was offered by the defendant, or asked by himself, while he remained at the Naval Academy, but that about two months after he had left, and while defendant was still superintendent there, he wrote and mailed to the proper address of the defendant, as such superintendent, a letter, whereof he has not kept a copy, but which he remembers to have contained a bill for $201.00, for the above mentioned tuition of defendant's daughters, and a pressing, though respectful request, for immediate payment; to this letter he received no answer; that so soon as he learned from his wife's visit to the defendant, as set out in the first bill of exceptions, of the latter's address in Washington, he wrote and mailed to the defendant's said address, the letter marked " Plaintiff's Exhibit H," which is as follows, to wit:

ST. DENNIS, NEAR RELAY,
*Balto. Co., Md.*, February 9, '78.

Rear-Admiral John L. Worden,
Washington City, D. C.,

Sir:—Under the circumstances, I think you will agree with me, that it is but proper that money matters between us should be promptly settled.

About two months after my leaving the academy, I sent to you from Brooklyn, N. Y., my bill for private lessons given by me to your daughters, at your request. As I

received no answer, I assumed that possibly my letter did not reach you. I intended to renew my claim afterwards, but you were abroad, and as I did not know where my letter could reach you, I postponed.

It is only to-day that I have been apprised of your return, therefore I take the liberty of sending again my bill, amounting to $201.00.

You will greatly oblige me by answering me promptly, either by sending your check for the amount, or by letting me know at what early date I may expect it.

Yours, most obediently,

B. MAURICE.

And whereof the date, February, 9th, 1878, is a mistake for March 9th, 1878, when it was in fact written; receiving no answer to this letter, either, he wrote to the Honorable R. W. Thompson, Secretary of the Navy, a letter, whereof the paper marked "Plaintiff's Exhibit I," which is as follows, to wit:

To Secretary Thompson, MARCH 25th, 1878.

Sir:—As the wilful and persistent neglect by an official of the navy, to pay a legitimate debt, is considered a dereliction of duty, and such a conduct is considered as unbecoming an officer, and it is customary in such cases for the creditor to seek and find redress at the hands of the superior authority, I respectfully beg to submit to your excellency the following charge against Rear-Admiral Worden:

On the beginning of the academic year, 1870, (October, 1870,) and at the unsolicited request of Rear-Admiral, then Commodore, Worden, Supt. of the U. S. N. A., I agreed to give private lessons in French to the daughters of said Commodore Worden, twice a week; these lessons were continued through the two academic years, 1870, '71, 1871–2. They were given during my free hours and of course had neither interference nor connection what-

ever with the discharge of my official duties at the academy.

About two months after my leaving the academy, I sent from Brooklyn, N. Y., my bill to Rear-Admiral Worden, amounting to $201.00 for the two years. No notice of my claim was taken by him; I renewed my claim during his stay abroad, by sending him a second letter through the Navy Department. No answer again.

As soon as I was apprised of his return on the ninth of the present month, I sent him again my bill, with a request for a prompt payment; again no answer was made to my just claim.

In such case I denounce to your excellency, the unbecoming conduct of Rear-Admiral Worden, in the hope that your direct intervention will induce him without further proceedings on my part, to fulfil his obligations towards me, by paying what he owes me.

I am particularly anxious to have this business question promptly settled in one way or another, as in case of persistent refusal to take notice of my claim, I intend to connect this affair with other charges of a more serious character, already filed against him in the bureau of the Navy, under your honorable predecessor, Mr. Robeson, which charges I am determined to renew with your excellency as soon as the present has been attended to, and the result of your intervention made known to me.

B. MAURICE.

Rear-Admiral, John L. Worden,

To Professor B. Maurice, Dr.

For private lessons in French, given to Misses
   Worden during two academic years, (8 mos.
   each,) at two lessons per week:

| | |
|---|---|
| 1870, '71, 66 lessons, a. $1.50 | $ 99 00 |
| 1871, '72, 68 " " | 102 00 |
| Amount due. | $201 00 |

---
Maurice *vs.* Worden.
---

—is a true copy, the original being in the Navy Department of the United States, in the District of Columbia; and received by mail from the said Secretary, (whose signature thereto he could prove,) the answer marked " Plaintiff's Exhibit J," which is as follows, to wit:

<div align="right">

NAVY DEPARTMENT,

*Washington,* April 5, 1878.
</div>

Sir:—Your letter of the 25th ultimo has been received.

The records of the department show your resignation at the Naval Academy to have been under such circumstances as to justify it in declining to take any steps in reference to the matter stated in your letter.

<div align="center">

Very respectfully,

(Signed,)      R. W. THOMPSON,

Secretary of the Navy.
</div>

Mr. B. Maurice, St. Dennis, P. O., Md.

That his reason for so writing to the said Secretary, was that by reason of his long connection with the Naval Academy, he knew that there prevailed in the United States Navy. a usage and custom familiar to all officers thereof, for the Navy Department to exert a pressure upon such officers when they refused to pay what the Department considered a just debt, in order to compel its payment.

And the plaintiff's counsel stated that he offered this evidence to prove want of good faith, and a corrupt motive on the part of the defendant, in writing and publishing the words complained of as libellous in the *narr.* To the admissibility of this evidence, the defendant objected, and the Court sustained the objection. The plaintiff excepted.

*Ninth Exception.*—The plaintiff having closed his case, the defendant asked the Court to instruct the jury as follows:

That no evidence has been given, legally sufficient to entitle the plaintiff to recover, and that their verdict must therefore be for the defendant.

The Court granted said prayer, and to the granting thereof, the plaintiff excepted; and the verdict and judgment being rendered against him, he appealed.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY and IRVING, J.

*John Thomson Mason* and *Charles J. Bonaparte,* for the appellant.

*J. Wirt Randall* and *John H. Thomas,* for the appellee.

BRENT, J., delivered the opinion of the Court.

The libel charged in the declaration, consists of an endorsement written by the appellee upon a letter of the appellant, tendering his resignation of the position of teacher of French in the United States Naval Academy at Annapolis. The letter, it is alleged, was addressed to the appellee, an officer in the United States Navy, and then in command and authority over the Naval Academy, to be by him transmitted to the Secretary of the Navy. Before being so transmitted, it is charged that it was falsely and maliciously endorsed with the alleged libel.

To the declaration, the appellee pleaded *non cul.,* and limitations in two forms—1st. That the cause of action did not accrue within one year; and 2nd, that the alleged writing and publishing was not within one year before the commencement of this suit.

Issue was taken to the plea of *non cul.,* and the appellant replied to the pleas of limitations, that he was kept in ignorance by the fraud of the defendant, of the cause of action accruing to him, and did not discover or know of the said fraud, nor could the same have been discovered

or known of by him, with usual and ordinary diligence on his part, before or until the third day of February, 1876, and that at the last mentioned date, the defendant was absent out of this State, and so remained until less than one year before this suit was brought. And the same as to the writing and publishing.

To each of these replications, the appellee filed four rejoinders, denying seriatim each one of the several facts alleged. Issues were thereupon joined by way of rebutter, and upon this state of the pleading, the case proceeded to trial.

The plaintiff put upon the witness stand Mrs. Maurice, who testified, subject to exceptions, that the defendant in 1878, in reply to a question from her, admitted that he had endorsed upon the resignation of the plaintiff, the words complained of as libellous, and also offered, subject to like exceptions, a copy furnished from the files of the Naval Academy, of said resignation and the endorsement thereon of the defendant. Mrs. Maurice further proved that she told the defendant she had this copy in her possession, and it was to that she referred in her conversation with him. At this stage of the case, the defendant moved to exclude all this testimony, and in connection with the motion, for the purpose of showing that the endorsement in question was a communication made by him to the Navy Department in the discharge of his official duty, and was upon that ground inadmissible in evidence against him, asked leave to call a witness, and to ask him whether the book referred to in the record as "Defendant's Exhibit A," was the book of regulations for the government of all persons attached to the United States Naval Service, in force on the 4th of October, 1872, and applicable to persons then attached to the United States Naval Academy at Annapolis. The plaintiff objected, and insists that having commenced his proof, he had the right to proceed and finish before any evidence on the part of the defend-

Maurice *vs.* Worden.

ant could be properly offered. The Court overruled the objection, and permitted the witness to be called. This is the error alleged in the first exception.

The rule of Court providing that "on trials of fact the plaintiff shall have the opening and conclusion," does not apply to the question here presented ; nor does the rule that the plaintiff must put in the whole of his evidence upon every point or issue which he opens, before the defendant proceeds with the evidence on his part. The offer of the defendant was not for the purpose of placing before the jury his evidence in defence, before the plaintiff had closed. The testimony offered was exclusively for the Court, whose province it was to determine whether the communication in question to the Secretary of the Navy, was such a privileged paper as excluded it altogether from being properly in evidence before the jury. Not to have decided the question when presented might have unnecessarily prolonged the trial. If the paper in question was absolutely privileged it was not admissible, and no proof, which the plaintiff could have afterwards offered, would have enabled him to recover. The proof proposed was necessary for the decision of this question, and the Court acted rightly in determining to hear it.

Another reason in support of the action of the Court may also be stated. If the communication should not have been held upon the proof offered to be absolutely privileged, it may have been found to fall within the class of communications to which the doctrine of qualified privilege is applied. This being so, the order of proof would become changed, by putting upon the plaintiff the burden of showing that the paper was not written from a sense of duty, but from malice and ill-will.

But the Court has at any stage of the trial, the right and power to exclude evidence improperly admitted, or admitted subject to exceptions. If its admissibility depends upon outside or collateral facts, there can be no

reason why the Court should not hear them without delay. The admissibility of evidence must not be confounded with the rule, directing the order in which the respective parties are required to offer their evidence in support of their case.

The defendant, after the objection of the plaintiff, as stated in the first bill of exceptions was overruled, proved that the book marked " Defendant's Exhibit A," contains the regulations for the government of all persons attached to the Naval Service of the United States, which were in force on the 4th of October, 1872, and were in force during the whole of the defendant's connection with the Naval Academy at Annapolis. These regulations purport to have been established by the Secretary of the Navy in March, 1870. Their binding effect upon the defendant cannot be questioned. The Act of Congress, *Rev. Stat. U. S., sec.* 1547, passed in accordance with Article 1, sec. 8, of the Constitution of the United States, by express terms, provides that the orders, regulations and instructions issued by the Secretary of the Navy, are to be recognized as the regulations of the Navy.

Number 1448 of these regulations, directs that "All officers through whom communications from inferiors are to be forwarded to the Department, one of the bureaus or any authority higher than themselves, must forward the same, if couched in respectful language, as soon after being received as practicable, and they will invariably state their opinion in writing, by endorsement or otherwise, in relation to every subject presented for decision." The resignation of the plaintiff was placed in the hands of the defendant, then Superintendent of the Naval Academy, to be forwarded to the Secretary of the Navy for his decision. The regulation referred to plainly required the appellee to state his opinion in writing, by endorsement or otherwise, in regard to the propriety of its being accepted. This he did by making the endorse-

Maurice *vs.* Worden.

ment complained of. It was therefore made in the line of his duty, and one of the questions presented by the second exception, is whether or not this endorsement is a privileged communication, and if so, to what extent?

There are two classes of privileged communications which form exceptions to the general law of libel. The one is absolutely privileged and cannot be sued upon, while the other may be the cause of action, and the suit upon it maintained on proof of actual malice. These privileges rest alone on the ground of public policy, and in speaking of them we have no reference to privileges which are secured by constitutional or statutory provisions.

A great number of authorities have been referred to, and they have been examined with care. There is but little conflict among them in relation to the class of communications which are regarded as absolutely privileged. The classification in *Starkie on Libel and Slander*, well states the conclusion drawn from the great bulk of the cases. Those enumerated by the author as being absolutely privileged, though false and malicious, and made without reasonable or probable cause, " are communications made in the course of judicial proceedings, whether civil or criminal, and whether by a suitor, prosecutor, witness, counsel or juror ; or by a judge, magistrate, or person presiding in a judicial capacity, of any Court or other tribunal, judicial or military, recognized by and constituted according to law ; and so also communications made in the course of parliamentary proceedings, whether by a member of either House of Parliament or by petition of individuals who are not members, presented to either house or to a committee thereof." *Folkhard's Starkie, sec.* 688, *and authorities there cited.* Beyond this enumeration we are not prepared to go. The doctrine of absolute privilege is so inconsistent with the rule that a remedy should exist for every wrong, that we are not disposed to

extend it beyond the strict line established by a concurrence of decisions.

There is a class of communications which the Courts will not require to be produced in evidence, where those having the custody of them, object to their publicity on the grounds of public policy. Such are official communications to the heads of government, and between its different departments. And under this head are most of the authorities cited by the appellee. " And where the law is restrained by public policy from enforcing the production of papers, the like necessity restrains it from doing what would be the same in effect, namely, receiving secondary evidence of their contents." 1 *Green. Ev.,* sec. 251. Whether this communication, being from an officer of the Navy to the Secretary of that department, is embraced in this class, is not a question raised by this record. It appears from it, that the Secretary not only does not object to the publicity of the communication, but has furnished a certified copy of it upon the express statement of the appellant's counsel that it was intended for use in this particular case.

We cannot, in view of the authorities or upon principle, hold the communication declared upon to be absolutely privileged. It was made in the line of duty, and this only clothes it with a privilege that is qualified. The occasion operates as a defence, unless express malice be proved. *Folkhard's Starkie,* sec. 679, *(M.) p.* 518.

In *Cook vs. Hill,* 3 *Sand.,* 349, the Court say, " We are not much inclined, after considering the authorities, to extend the doctrine of absolutely privileged communications. We shall conform to the settled rule as far as the law has carried it; but we shall go no further. * * * The doctrine has not been extended here beyond legal proceedings; and applications, memorials, and similar matters presented to the Legislature and growing out of legislative proceedings. * * The other class of privi-.

leged communications, for which there is no absolute privilege, is very numerous. In order to make the writer or publisher liable, it must appear that he acted maliciously and without probable cause. If there were no probable cause for the communication, the law implies that it was made with malice. If, however, it appear that there was probable cause, the communication is privileged, no matter how much actual malice dictated it."
In *Garrett vs. Dickerson*, 19 *Md.*, 450, the general doctrine is announced that "The only effect of privilege on actionable words is to rebut the legal inference or presumption of malice, and to that extent constitute a good defence in an action on them." In *White vs. Nicholls*, 3 *How.*, 267, where the question of privilege was presented, the Supreme Court refused to extend the doctrine of *absolute* privilege to cases where the author of the alleged slander acted in the *bona fide* discharge of a public or private duty, *legal* or moral. In speaking of it as embraced by the "exceptions" to the general law of slander and libel, the Court say on page 287, "But the term 'exceptions,' as applied to cases like those just enumerated, could never be interpreted to mean that there is a class of actions or transactions placed above the cognizance of the law, absolved from the commands of justice. It is difficult to conceive how, in society where rights and duties are relative and mutual, there can be tolerated those who are privileged to do injury *legibus soluti*; and still more difficult to imagine how such a privilege could be instituted or tolerated upon the principles of social good. The privilege spoken of in the books should, in our opinion, be taken with strong and well defined qualifications. It signifies this and nothing more. That the excepted instances shall so far change the ordinary rule with respect to slanderous or libellous matter, as to remove the regular and usual presumption of malice, and to make it incumbent on the party complaining to show malice, either by the construction

of the spoken or written matter, or by facts and circumstances connected with that matter or with the situation of the parties, adequate to authorize the conclusion." The doctrine announced in this case in relation to the privilege of those acting in a judicial capacity, has been modified and explained in the subsequent case of *Bradley vs. Fisher*, 13 *Wall.*, 335; but there is nothing in that case in any way in conflict with the doctrine announced in respect to communications or words spoken in the *discharge of a duty*.

The case principally relied upon by the appellee is that of *Dawkins vs. Lord Paulet, L. Reps.*, 5 *Q. B.*, 94. This case is one at *nisi prius*, and does not carry with it the weight of decisions by Courts of last resort. An opinion is delivered by each of the three Judges who sat. Two of them held the communication to be absolutely privileged. But we think the entire force of their decision is taken away by the able dissenting opinion of C. J., COCKBURN. He discusses very fully the question of public policy, which it was claimed required a communication from an officer in the army to his superior to be absolutely privileged, and in his review of the authorities, satisfactorily, in our opinion, shows that they do not support the views of the majority of the Court. The alleged libel in that case consisted of communications from an officer of the army "in the course of military duty and as an act of military duty." It was claimed that they were absolutely privileged. But Chief Justice COCKBURN thought differently, and was of opinion that an action would lie if the communications were made of actual malice and without reasonable and probable cause. We concur in the views taken in his opinion, and believing that they state the true rule of law, shall adopt them rather than the conclusions reached by the two judges who sat with him.

In *Dickson vs. The Earl of Wilton*, 1 *Fos. & Fin.*, 419, where the alleged libel consisted of communications from

an officer of the army made in the course of duty, the question of privilege was raised by the Attorney-General. Lord CAMPBELL, C. J., who sat in the case, seeming to think it so clear the communications were not *absolutely* privileged, that he did not even refer to them in that connection. "The first question," he says, "is, whether these were what the law called privileged communications; for if so, the defendant is not called upon to prove their truth, provided they were made in good faith. The law most reasonably says, that what is written or spoken in the course of business, or in a matter of serious interest, where a person has a duty to perform, or an interest to consult, and addresses a person who has a like interest, and a relative duty to perform, the communication is privileged. * * Whether or not the occasion gives the privilege is a question of law for the Judges; but whether the party fairly and properly conducted himself in the exercise of it is a question for the jury."

We deem it unnecessary to multiply the citation of cases upon this question of privilege. We are satisfied that the communication in question does not fall within the class of communications which are *absolutely* privileged. We hold it, however, to be privileged, to the extent that the occasion of making it rebuts the presumption of malice, and throws upon the plaintiff the *onus* of proving that it was not made from duty, but from actual malice and without reasonable and probable cause.

The next question is the exclusion of the testimony of Mrs. Maurice, as to the admission of the defendant that he made a certain endorsement on the letter of resignation of the plaintiff. This evidence is not secondary, but comes within the class of primary evidence. The admissions of a party, freely and voluntarily made, are always evidence, which may be introduced by the opposite party.

In *Smith vs. Palmer*, 6 *Cush.*, 520, it is said, "The admissions of a party are not open to the same objection

17          v. 54.

which belongs to parol evidence from other sources. A party's own statements and admissions are in all cases admissible in evidence against him, though such statements and admissions may involve what must necessarily be contained in some writing, deed, or record."

In *Loomis' Adm'r vs. Wadhams,* 8 *Gray,* 562, the Court quoting from Mr. Justice PARKE in *Earle vs. Picken,* 5 *Car. & P.,* 542, say, " What a party says is evidence against himself as an admission, whether it relates to the contents of a written paper or anything else." See also *Slattery vs. Pooley,* 6 *M. & W.,* 669; 1 *Green. Ev., sec.* 203 ; 1 *Taylor Ev., sec.* 668.

The evidence however must be confined to the admissions of the party. We do not understand from the record that the defendant admitted the copy furnished from the files of the Naval Academy to be a true copy from the original. It does not seem to have been shown to him. The witness states she had it in her possession, and that it was to that copy that she had reference in her conversation with the defendant. As an admission of the defendant this copy was not admissible, nor was it admissible upon its own merits, as it was a copy from a copy and no sufficient ground had been stated in the proof to let it come in as secondary evidence.

The refusal to admit the copy was strictly proper, but there was error in ruling out the testimony of Mrs. Maurice in relation to the admissions of the defendant.

The letters referred to in the third bill of exceptions, as plaintiff's exhibits B and C, being the letter asking for the originals of the papers involved in this suit, and the reply of the Secretary, after proof of their genuineness, are admissible for the purpose of laying a foundation for the admissibility of secondary evidence.

The certified copy from the Navy Department, signed by the Secretary, with the seal of the Department attached is claimed to be admissible under the Act of Congress.

Maurice *vs.* Worden.

*U. S. Revised Statutes, sec.* 882. Unon this point we shall express no opinion.

We think, however, that the copy certified as it is by the seal of the Navy Department, is admissible in evidence under a fair construction of the very comprehensive language of the statute of this State. By *sec.* 36, *Art.* 70, *Revised Code,* 1878, it is provided that " a copy of any deed *or other instrument of writing lodged for safe-keeping in any office* or Court agreeably to the laws of the State or country as aforesaid, and certified as aforesaid, shall be good and sufficient evidence in any Court of this State to prove such deed or instrument of writing."

We can clearly gather from this record that the papers contained in this copy are lodged in the Navy Department for safe-keeping, " agreeably to the laws of the " United States. Assuming this to be so, the place of their lodgment is an office for their safe-keeping within the meaning of the statute; and a copy, under the hand of the Secretary and the seal of the Department, is within the section referred to and admissible in evidence.

The evidence offered in the fifth and sixth bills of exceptions is not admissible. That portion of it in the sixth exception relating to a search for the papers in the Navy Department between the 5th of January, 1876, and the defendant's return to the City of Washington in February, 1878, may be admissible under the plea of fraudulent concealment, provided it is followed up by proof tending to show that the defendant had been instrumental in fraudulently suppressing them. But in the shape in which it is presented it could not be admitted.

The evidence in the seventh bill of exceptions, in relation to what transpired between the defendant and plaintiff in their interviews about the time of the latter's resignation, is admissible. The *onus* is thrown upon the plaintiff of establishing actual malice and want of probable cause, as stated in a previous part of our opinion, and

---

Maurice *vs.* Worden.

---

this evidence has some slight tendency in that direction. It should not therefore be excluded from the jury.

We can see no relevancy to the issues in this case, of the proof offered in the eighth bill of exceptions. It is wholly in regard to another matter, and can have no proper weight in determining any of the questions here involved.

The ninth exception is to the prayer granted by the Court. This is disposed of by what has been already said.

From the views we have expressed, the judgment must be reversed, and a new trial will be directed.

*Judgment reversed, and*
*new trial ordered.*

(Decided 30th June, 1880.)


MILLER, J., filed the following dissenting opinion:

The Constitution of the United States declares that Congress shall provide and maintain a Navy, and make rules for the government and regulation thereof; and Congress has provided that the orders, regulations and instructions issued by the Secretary of the Navy shall be recognized as the regulations of the Navy. *Rev. Stat. U. S., sec. 1547.* One of the regulations so issued, is that " all officers through whom communications are to be forwarded to the Department, one of the bureaus, or any authority higher than themselves, must forward the same if couched in respectful language, as soon after being received as practicable, and they will invariably state *their opinion* in writing, by endorsement or otherwise, in relation to *every subject* presented for decision; the term 'forwarded' is only to be endorsed upon such papers as require no action from the Department or other authority." The plaintiff held the position of Assistant Professor of French in the United States Naval Academy at Annapolis, and the

defendant, Admiral Worden, was the Superintendent of the academy, through whom all communications to the Department by his inferiors in that service were to be forwarded. The plaintiff tendered to the Admiral his resignation in writing, and the Admiral endorsed thereon his reasons why it should be immediately accepted, and forwarded it to the Navy Department, and this endorsement contains the alleged libel, which is made the foundation of this action. It is plain, therefore, that the endorsement containing the matter complained of, was made by the defendant in the discharge of a duty imposed upon him by law. In my opinion, the communication thus made ought to be absolutely privileged.

It is true there are to be found many *dicta* of eminent Judges, expressing the reluctance of Courts to extend the class of absolutely privileged communications, but in the whole range of authorities upon the subject, I have found but one in which the precise question which this case presents, has ever directly arisen for adjudication, and been decided by any Court, either in this country or in England, and in that the privilege was sustained. I refer to the case of *Dawkins vs. Lord Paulet, Law Rep.,* 5 *Queen's Bench,* 94. It was an action for libel, and the question of the absolute privilege of just such a communication respecting his inferior made by a superior officer in the British army, in discharge of his military duty, for the information of the commander-in-chief, was directly presented by *demurrer* to a replication which alleged that the words in the declaration mentioned, were written and published by the defendant of actual malice on his part, and without any reasonable, probable or justifiable cause, and not *bona fide* or in the *bona fide* discharge of the defendant's duty as such superior officer. The cause was ably argued in the Court of Queen's Bench before four Judges, was held under advisement for an unusual length of time, and elaborate opinions were delivered. The

Lord Chief Justice (COCKBURN) dissented, but the other three Judges concurred in sustaining the privilege, and gave judgment for the defendant. The leading opinion of the majority was delivered by MELLOR, J., and, as it seems to me, that opinion places the privilege upon reasonable and safe grounds. "The Attorney-General," he says, "has likened the case of the defendant to that of the Judges of Courts of law, to grand jurymen, petty jury-men, and to witnesses against whom no action lies for what they do in the course of their duty, however maliciously they may do it. He claimed the immunity of the defendant for acts done in the course of his duty on the highest grounds of policy and convenience. No Judge, nor juryman, nor witness, he said, could discharge his duty freely, if not protected by a positive rule of law, from being harassed by actions in respect of the mode in which he did the duty imposed upon him, and he contended that the position of the defendant manifestly required the like protection to be extended to him, and to all officers in the same position ; and there is I think little doubt that the reasons which justify the immunity in the one case, do in great measure extend · to the other. How can a commander freely communicate his real opinions to the adjutant-general, as to the conduct, qualifications or fitness for particular duty of any officer, if his opinion be prejudicial to such officer, under the dread of an action for libel, or other action, which, if he were not protected, might be brought against him, by any dissatisfied subordinate officer, who might consider himself aggrieved? To this it may be answered, that no action would lie, as his communication would be privileged if made *bona fide*, and without malice. On the other hand, it must be observed that although his communication might be privileged, still cases might frequently occur, in which the Judge on a trial at law, would have to submit to a jury the most difficult question

Maurice *vs.* Worden.

of military discipline, such as whether orders disobeyed were proper orders for a commander to give, or given maliciously and not *bona fide*, or whether the opinion expressed as to the competency of a subordinate officer for particular duties was justifiable or not. The promotion of an incompetent man may cause the greatest disaster, and yet if the person who has made his report as to the fitness or unfitness of such officer, is to do it under the idea that the opinion he expresses, may· be overruled by a jury ignorant of such matters, how can he be expected to do it freely? The Attorney-General relied not only on the analogy he drew from the case of a Judge, juryman or witness, but he cited in support of his argument, the opinion of Lord MANSFIELD, and Lord LOUGH-BOROUGH in the case of *Sutton vs. Johnstone,* (1 *Term Rep.,* 544,) and there is no doubt that those eminent Judges did in the Court of Error, express an opinion in the analogous case of an action for a malicious prosecution of a naval officer, by the commander-in-chief of a naval squadron, that no such action could lie, and in the course of their observations, they said ' if this action be admitted, every acquittal before a court-martial will produce one. Not knowing the law or the rules of evidence, no commander or superior officer will dare to act; their inferiors will insult and threaten them.' And again, ' if every trial that is by court-martial is to be followed by an action, it is easy to see how endless the confusion, how infinite the mischief will be.' These considerations appear to me to apply *a fortiori* to a case like the present, in which the letters and reports complained of, were written by the defendant in the performance of a positive duty, and for the purpose of obtaining an investigation of the matters therein alleged by a competent military tribunal. It is to be observed that the opinion expressed by Lords MANSFIELD and LOUGHBOROUGH, although of the greatest weight, and given after the fullest consideration, was not neces-

sary to the judgment in that case, which actually proceeded on other grounds, and therefore does not amount to a decision binding on us, to declare that no such action will lie, and does not conclude us with reference to the present case, but the exposition of the law expressed in that opinion, has been generally accepted and referred to in other cases as a very weighty authority. It was evidently given after great consideration, and derives additional weight from the fact, that it was delivered in a Court of Error, and after an argument displaying the greatest ability and research. It proceeds upon the principle, that the law will rather suffer a private mischief, than a public inconvenience. It was observed by EYRE, B., in delivering the opinion of the Court of Exchequer, that the ground upon which the immunity from actions enjoyed by Judges and jurymen proceeds, is that the law gives faith and credence to what they do, and therefore there must always in what they do, be cause for it, and there never can be malice in what they do. CROMPTON, J., in *Fray vs. Blackburn,* stated that the immunity of Judges of the Superior Courts, was established to secure their independence, and to prevent them from being harassed by vexatious actions. It is manifest that the administration of justice would be paralyzed, if those who are engaged in it were to be liable to actions upon the imputation that they had acted maliciously, and not *bona fide;* and it is to be observed that this absolute privilege is not confined to the administration of justice in the Superior Courts, but has been also applied in its fullest extent to Judges of the County Courts, (*Scott vs. Stansfield, Law Rep.*, 3 *Ex.*, 220;) nor is it indeed confined to the administration of justice; for it is well established that members of Parliament cannot be called in question out of Parliament for any thing they may say in Parliament in the course of any proceedings in Parliament, and in like manner ministers of the crown cannot, from reasons of the

highest policy and convenience, be called to account in an action for any advice which they may think right to tender to the Sovereign, however prejudicial such advice may be to individuals. Do not these reasons of public policy and convenience strongly apply to the present case? Can the administrative duties discharged by officers of the army in the position of the defendant be liable to be reviewed by a jury in an action at law without producing the greatest mischief and public inconvenience? I shall presently show that a special mode of redress for all officers in the army who consider themselves wronged by their superior officers in relation to the discipline and government of the army is expressly provided by the articles of war, and in that view how inconsistent it would be that the judgment of a military tribunal familiar with the question, should be liable to be reversed, and a different result obtained by the verdict of a jury in an action at law upon the very same facts? It is true that a standing army was unknown to the common law, and was always looked upon with great jealousy by our ancestors, but it is now and has been for many years regulated by Acts of Parliament and by articles of war framed under them, which provide appropriate Courts and suitable machinery, and there is now a Secretary of State for War expressly appointed by the Crown, with a series of officers charged with particular duties and functions, all tending to the regulation and government of her majesty's forces, and I cannot but think that the analogies referred to do in principle apply to such a state of things. Upon these considerations, and supported by the opinion of Lords MANSFIELD and LOUGHBOROUGH, and that of other Judges, I come to the conclusion that the present action will not lie."

In the subseqent case of *Dawkins vs. Lord Rokeby, Law Rep.,* 8 *Queen's Bench,* 255, decided in the Exchequer Chamber, it was held that statements, whether oral or

written, made by an officer summoned to attend and give
evidence before a military Court of enquiry which had no
power to administer an oath, and was "not to be con-
sidered in any light as a judicial body," are absolutely
privileged, even though made *mala fide* and with actual
malice, and without reasonable and probable cause.   Of
course the question was not identical with that decided
in *Dawkins vs. Lord Paulet*, but that decision was referred
to, and KELLY, C. B., in delivering the unanimous judg-
ment of the ten Judges by whom the case was heard,
said: "We think with the majority of the Judges in *Daw-
kins vs. Lord Paulet*, that the *motives* as well as the duty
of 'a military officer, acting in a military capacity, are
questions for a military tribunal *alone*, and not for a Court
of law to determine,'" and he added that "the ruling of
Lord CAMPBELL in *Dickson vs. Lord Wilton*, 1 *F. & F.*,
419, that the communication charged as a libel, though
held by the Secretary of War on behalf of the Crown,
should be produced from his office and read in evidence
was directly at variance with the judgment of the Ex-
chequer Chamber in *Home vs. Bentinck*, and the decision
that the communication itself was for the consideration of
the jury upon the question of malice, was inconsistent with
the great mass of authorities above referred to."

These decisions have unquestionably settled the law of
England on this subject, unless and until it shall be de-
termined to be otherwise by the Court of last resort.   I
am unable to perceive why the principle thus settled by
the English Courts should not be followed and applied to
the officers of our army and navy.   In my opinion the
doctrine is just, wise, and salutary.   To place an officer
of the Navy in such a position as the defendant in this
case held, where it was made by law *his duty*, under pen-
alty of a court-martial and dismissal from the service if he
refused or neglected to discharge it, to state in writing
*his opinion* in relation to the subject of every commu-

Maurice *vs.* Worden.

nication from a subordinate, to be forwarded through him to the Navy Department and requiring its action, and then to subject him to the expense and harassing annoyance of defending actions of libel, even though he may be eventually successful therein, by every subordinate officer who may think himself aggrieved by the opinions thus expressed by his superior, seems to me to be unreasonable and unjust. In my judgment all the reasons of public policy and convenience so forcibly stated by the English Judges apply to the exigencies of our military and naval service. In both countries the army and navy are governed by substantially the same laws, rules, and regulations, and the same evils, confusion and mischief will result here as there, from withholding the protection which the English Courts have thrown over such communications. Those who seek and obtain positions and appointments in such service do so with a full knowledge of the rules and regulations to which they are to be subjected. These differ widely from the ordinary laws to which other citizens are subjected, but they are such as long experiance has demonstrated to be essential to the usefulness and efficiency, if not to the very existence of the service itself. If a subordinate in such service suffers wrong and injustice from his superior while acting in the discharge of *his duty*, he can seek the redress which these rules and regulations have amply provided for the vindication of his character and honor, and the punishment of the wrongdoer. It seems to me he should be confined to such remedy, and not be allowed to bring such grievances before the civil tribunals.

Entertaining, as I do very strongly, these views of the case, I cannot assent to the conclusion reached by a majority of the Court upon the main question presented, and am of opinion the judgment in favor of the defendant should be affirmed.